## ILLINOIS CENT. R. CO. v. MOODIE.*

Circuit Court of Appeals, Fifth Circuit.
February 3, 1928.

No. 5194.

1. **Master and servant** ⊜⟳92(1)—**Railroad which furnishes hospital accommodations for employees and uses ordinary care in selecting attendants is not liable for their negligence.**

Railroad company, furnishing hospital accommodations and medical attendance for employees, who contribute 75 cents a month each toward fund used for illness not incurred in line of duty, *held* not liable to employee, who became inmate of hospital and was operated on, for negligence of nurses and doctors, where plaintiff fell out of bed after operation and suffered fractured hip, where railroad used ordinary care in selecting attendants, and all doctors and nurses employed were considered competent and of first-class reputation when employed, since railroad comes under designation of charitable institution for purpose of fixing liability in such cases.

2. **Master and servant** ⊜⟳92(1)—**That railroad's charitable hospital was not equipped with portable X-ray machine held not to show failure to furnish necessary hospital equipment.**

Where a portable X-ray machine was available if needed, fact that railroad's charitable hospital for employees was not equipped with one would not show failure to furnish its employees and inmates with modern and necessary hospital equipment, and would not support recovery for fractured hip, sustained when he fell out of bed after operation and not promptly attended to, on ground of lack of proper equipment.

In Error to the District Court of the United States for the Northern District of Alabama; William I. Grubb, Judge.

Action by D. E. Moodie against the Illinois Central Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed.

W. H. Sadler, Jr., of Birmingham, Ala. (Nesbit & Sadler, of Birmingham, Ala., and R. V. Fletcher, of Chicago, Ill., on the brief), for plaintiff in error.

Hugo L. Black, of Birmingham, Ala. (Black & Fort, of Birmingham, Ala., on the brief), for defendant in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. Defendant in error, hereafter called plaintiff, brought suit in separate counts to recover damages for personal injuries alleged to have been caused by the negligence and breach of contract of plaintiff in error, hereafter called defendant. At the close of the evidence, defendant asked for the general affirmative charge on each

*Rehearing denied April 9, 1928.

count, which was denied. The case went to the jury, and resulted in a verdict for plaintiff, on which judgment was entered. Error is assigned to the refusal of the court to direct a verdict for defendant.

The material facts shown by the record, which are undisputed, are these: Defendant, an interstate railroad, has established a hospital department in charge of a chief surgeon, who employs doctors, nurses, and other necessary help. Hospitals for the treatment of its employees are maintained at various places, including New Orleans. The employees contribute 75 cents a month each, which is deducted from their pay, to a hospital fund, which is segregated from the other funds of the company and devoted exclusively to the hospital department and to medical treatment of employees for illness not incurred in their line of duty. Defendant is obligated to contribute to this fund in case of a deficiency, but so far there is a surplus in the fund. If an employee, or a passenger, or a trespasser, is injured on the road, he receives medical attention, and for this the company contributes the cost to the hospital fund. Hospitals maintained by defendant are not operated for profit, though sometimes persons not coming within the classes above enumerated are received in them for treatment for which they pay, and an employee is also required to pay extra if he is furnished with a private room. Plaintiff, an employee, became an inmate of defendant's hospital at New Orleans and was operated upon on October 1, 1925. The next day, while semiconscious, he fell out of his bed, or fell after arising, and suffered a fractured hip. There was a nurse in attendance upon him, but she had absented herself from the room temporarily, leaving his wife with him. His wife also had left the room when the accident occurred. Plaintiff was under the care of the senior physician in charge of the hospital, but he did not discover the fracture at all. Some 30 days after the accident, the senior physician resigned, and his successor took charge of plaintiff and then discovered that his hip had been fractured. It was then too late to set it without a serious operation, and nothing was done except to alleviate his pain. Plaintiff was subsequently discharged from the hospital, but was permanently injured. The hospital was equipped with modern appliances of all kinds, except that it did not have a portable X-ray machine, which would have been necessary to properly diagnose plaintiff's injury, as he was not well enough to be taken into the X-ray room. However, the hospital had an arrangement with one of its radiologists who owned a port-

able X-ray machine by which the machine was available at all times for use in the hospital, and there were other such machines in the city that could have been procured. All of the doctors and nurses employed by the defendant at the hospital were shown by uncontradicted testimony to have been considered competent and of first-class reputation when employed.

The main contention of plaintiff is that there was an express contract between plaintiff and defendant under which defendant agreed for a consideration to give to plaintiff medical, surgical, and hospital treatment and hospital accommodations when needed, and that this contract was breached by the failure to furnish him with competent nurses and physicians and a properly equipped hospital, and that his injury was caused by the malpractice of the physicians and nurses employed by defendant and the failure to have in the hospital a portable X-ray machine.

[1] It may be conceded for the purposes of discussion that there was a contract by which defendant agreed to furnish medical treatment and hospitalization to plaintiff, and that the nurses and doctors in charge of plaintiff when he was injured were negligent, but that does not necessarily establish liability in the defendant for the consequent injury.

In the case of Union Pacific Ry. Co. v. Artist (C. C. A.) 60 F. 365, 23 L. R. A. 581, in a well-considered opinion by Judge Sanborn, the rule is stated as follows:

"The rule is that those who furnish hospital accommodations and medical attendance, not for the purpose of making profit thereby, but out of charity, or in the course of the administration of a charitable enterprise, are not liable for the malpractice of the physicians or the negligence of the attendants they employ, but are responsible only for their own want of ordinary care in selecting them."

In that case the facts were practically the same as in this case, and the railroad company was held to come under the designation of a charitable institution for the purpose of fixing liability. To the same effect, are the following cases: Parsons v. Yolende Coal & Coke Co., 206 Ala. 642, 91 So. 493; Congdon v. Louisiana Sawmill Co., 145 La. 209, 78 So. 470; Carr v. Nor. Pac. R. Co. (C. C. A.) 273 F. 511; Deming v. Price (C. C. A.) 276 F. 668. There are numerous other authorities to the same effect.

Without stopping to review them, it is enough to say that the cases cited by plaintiff are not in point. There is no dissent from the rule above stated in any of them, but in

each of the cases it is shown that there was either failure to furnish medical attention at all, or the refusal to continue it, or incompetent physicians had been employed, or the surplus of the fund created by contributions of the employees was used for other purposes by the employer.

[2] Considering that a portable X-ray machine was available if needed, the fact that the hospital was not equipped with one would not show a failure to furnish plaintiff with modern and necessary hospital equipment, and would not support a recovery on that ground.

The conclusion reached is that the motion for a directed verdict should have been granted. It is unnecessary to consider the other errors assigned.

Reversed.