(91 South. 493)

## PARSONS v. YOLANDE COAL & COKE CO.
### (6 Div. 240.)

(Supreme Court of Alabama.   Oct. 13, 1921. Rehearing Denied Nov. 17, 1921.)

**1. Master and servant ⊜➙92(1)—Master is not liable for malpractice of physician employed for servant, in the absence of negligence in his selection.**

An employer, who deducts a certain sum monthly for employees' medical and hospital services and for the employment of a physician, is not accountable for the malpractice of the physician employed, unless the employer has failed to exercise due care in selection of the physician.

**2. Master and servant ⊜➙92(1)—Doctrine of respondeat superior inapplicable to employment of physician attending servant.**

A mining company, securing medical services for its employees by deducting a stipulated sum from their wages for the employment of a physician by the company, is not liable, under the doctrine of respondeat superior, for malpractice.

Appeal from Circuit Court, Tuscaloosa County; Henry B. Foster, Judge.

Action by L. F. Parsons, as administrator, against the Yolande Coal & Coke Company, for damages for the death of his intestate. There was verdict for the plaintiff, which on motion was set aside, and plaintiff appeals. Affirmed.

Counts 17 and 18 are as follows:

(17) The plaintiff, as administrator of the estate of Sam Parsons, deceased, claims of the defendant the other and further sum of $50,-000 as damages, for that heretofore, on, to wit, October 16, 1918, the defendant was engaged in the coal-mining business at Yolande, in Tuscaloosa county, Ala., where it conducted large and extensive operations as a miner of coal in said county and state, and where, as such coal miner, it maintained extensive works and had a large number of employees, to wit, 250

to 300 employees; and the plaintiff avers that the defendant, as an inducement to members of the public to engage themselves to it as employees in its business as such coal miner, represented to each of its said employees, engaged in mining coal for it, that it would at all times, in consideration of the sum of, to wit, 75 cents per month, to be paid to it by each of its employees, in the event any of its employees should become ill or sick while in its employ, furnish him a competent physician to treat him for such illness, and to furnish all necessary medical treatment and medicines during such illness or sickness; and the plaintiff avers that on, to wit, October 16, 1918, this plaintiff's intestate was in the employ of the defendant as a coal miner under said agreement with said defendant to furnish him a physician to treat him, and all necessary medical treatment and medicines during his illness or sickness, and that prior to and subsequent to said date the said defendant was paid the said sum of, to wit, 75 cents per month, by the plaintiff's intestate for such medical treatment and medicines.

And the plaintiff avers that it became the duty of the said defendant to its said employees, in case of the illness of any of such employees, to furnish such ill employees or employee appropriate medical treatment and medicines during such illness as were necessary; and the plaintiff avers that it was the custom of the defendant to deduct from the wages of each of its employee at work for it at said point in mining coal for it the sum of, to wit, 75 cents per month, for such medical treatment and medicines; and the plaintiff avers that, during the period that his intestate was in the employ of the said defendant as such coal miner at said place, the said defendant deducted from plaintiff's intestate's wages the said sum of, to wit, 75 cents per month for said purposes; and the plaintiff avers that his intestate was at work for said defendant as a coal miner under said contract for, to wit, a long period prior to said October 16, 1918, and that on said, to wit, 16th day of October, 1918, the said plaintiff's intestate became sick, and that thereupon it became the duty of the said defendant to furnish to the plaintiff's intestate, during such sickness, proper medical aid and attention, and proper medicines for the purpose of curing him of said sickness; and the plaintiff avers that the defendant was so negligent in the manner in which it treated this plaintiff's intestate through physicians for said illness, and in the manner in which and the character of the medicines it furnished to the plaintiff's intestate, that the plaintiff's intestate died on, to wit, the 26th day of October, 1918, to the damages of the plaintiff in the said sum of $50,000, and the plaintiff brings suit.

(18) The plaintiff, as administrator of the estate of Sam Parsons, deceased, claims of the defendant, the other and further sum of $30,000 as damages, for that heretofore, to wit, the plaintiff avers all the facts and things set up in the seventeenth count of the complaint, and adds thereto the following:

And the plaintiff avers that, at the time he was so treated by said physician, the said physician was an agent of the said defendant and was acting in the line and scope of his employment.

The other facts sufficiently appear from the opinion of the court.

W. M. Sorrell and Vaughan & Silberman, all of Birmingham, and Ed. De Graffenried, of Tuscaloosa, for appellant.

There can be no question of the liability of the defendant for the death of the intestate, if it was caused through any fault of the company physician. 16 Ala. App. 241, 77 South. 79; 178 Ala. 580, 59 South. 627. The action survived under the Homicide Act. Sections 2486, 2498, Code 1907. The physician was guilty of malpractice, rendering his employer liable to other employees who had paid for treatment. 30 Wash. 349, 70 Pac. 972, 94 Am. St. Rep. 880; 20 Cyc. 1049, 1050; authorities supra; 80 Fed. 365, 25 C. C. A. 486. It was not necessary that the defendant should have been receiving a profit or compensation for its undertaking. 191 Ala. 572, 68 South. 4, L. R. A. 1915D, 1167. The fact that the servant was physically unable to perform his duties is sufficient to charge the master with negligence in employing him. 28 Cyc. 1293; 122 N. Y. 557, 25 N. E. 915, 19 Am. St. Rep. 523. Counts 17 and 18 were not vicious. 30 Wash. 349, 70 Pac. 972, 94 Am. St. Rep. 880; 13 Mont. 215, 33 Pac. 1012; 18 Wash. 368, 51 Pac. 402, 1046; 126 Ky. 288, 103 S. W. 273, 11 L. R. A. (N. S.) 711; (Ky.) 88 S. W. 315.

J. L. Davidson, of Birmingham, and H. A. & D. K. Jones, of Tuscaloosa, for appellee.

The only duty that the law imposed upon appellee under the allegations of counts 17 and 18 was to exercise reasonable care and diligence in the selection of a competent physician and the counts do not allege that the appellee failed to discharge that duty. 62 Fla. 124, 56 South. 937; 32 Fla. 46, 13 South. 638; 103 Tex. 603, 132 S. W 113, 30 L. R. A. (N. S.) 1206; 84 Ohio St. 74, 95 N. E. 509, 36 L. R. A. (N. S.) 50, Ann. Cas. 1912B, 933; 102 Va. 23, 45 S. E. 740, 102 Am. St. Rep. 839; 33 Tex. Civ. App. 314, 76 S. W. 452; 94 Tenn. 713, 30 S. W. 1036. 28 L. R. A. 552, 45 Am. St. Rep. 767; 72 W. Va. 728, 79 S. E. 941, 48 L. R. A. (N. S.) 536; 26 Cyc. 1082; Labatt, M. & S. 6216. On these same authorities the court erred in refusing the general charge as to counts 17 and 18, and in giving those portions of the oral charge excepted to. Appellees derived no peculiar benefit, directly or indirectly, from the contract, nor with the position, and would not be liable for his negligence. For these reasons the court properly granted a new trial, and its judgment should be affirmed.

GARDNER, J. Appellant, as administrator of the estate of Sam Parsons, deceased, brought this suit against the appellee for

the recovery of damages because of the death of his intestate, resulting from an attack of influenza. There was judgment for the plaintiff, which was set aside by the trial court on motion for a new trial; and, from the judgment of the court setting aside this verdict, the plaintiff prosecutes this appeal.

The defendant is an industrial corporation, engaged in the mining of coal and its preparation for the market, employing several hundred men in and about the conduct of its business. Plaintiff's intestate was one of the defendant's employees. At the time of intestate's employment, it was defendant's custom to deduct a stipulated sum from each of its employees for medical and hospital services and for the employment of a physician for the purpose of treating such employees in case of illness. Plaintiff's intestate being an unmarried man, the amount deducted for this purpose was 75 cents per month; and we are of the opinion there is sufficient evidence tending to show that sum was legally deducted from the intestate's wages, and with his consent. The evidence shows that all the funds so collected were devoted specifically to such purposes or a separate fund for the benefit of the employees, and that the defendant corporation derived no profit therefrom. It further appears that the defendant, in 1910, entered into a contract with one Dr. Carpentur, whereby the latter was to render medical and surgical attention to the employees of the company in cases of sickness and injury, the defendant to make collections of a stipulated amount each month from each employee and pay such collection to such physician. While this contract expired under its terms on September 1, 1911, yet the arrangement was continued until and during the period of time here involved, in October, 1918.

Plaintiff's intestate became sick on October 16, 1918, and died on the 26th of that month. It was without conflict that Dr. Carpentur was a competent and skillful physician, and of good standing in his profession; and there was no evidence that defendant failed to exercise due and reasonable care in the selection of a competent and skillful physician.

Counts 17 and 18 rested for recovery upon the averments of malpractice on the part of the physician. They contained no averment of a failure on the part of the defendant to exercise reasonable care and diligence in his selection. Upon consideration of the motion for a new trial, the court below reached the conclusion that these counts were subject to demurrer, for the reason that, under such contract, as alleged in the complaint, the full measure of the duty of the defendant was to exercise reasonable care and diligence in the selection of a competent physician, and also, as the evidence was without conflict to the effect there had been no failure in this respect, that the general charge requested by the defendant as to these counts should have been given. For these reasons, the trial court granted the new trial, as disclosed by his opinion which is set out in the record.

While other questions were presented in the trial of the cause, counsel for appellant confine themselves to a discussion of counts 17 and 18, and our consideration will likewise be limited to the question there presented.

[1] Mr. Labatt, in his work on Master and Servant (2d Ed.) vol. 5, p. 6216, says:

"The decided preponderance of authority is in favor of the doctrine that, under an arrangement of this character, he is not accountable for the negligence or unskillfulness of physicians or surgeons employed by him, unless he has failed to exercise due care in selecting them. One of the considerations to which his restricted liability has been referred is that persons engaged in business enterprises cannot be supposed to possess the technical skill required for proper treatment of the sick and injured, and must perforce rely on practitioners who possess the requisite qualifications. But it is manifest that, unless the practitioners retained by a master are independent contractors, the mere fact that the work required was such as to demand the exercise of special skill would not necessarily involve, as a corollary, the master's exemption from liability for their negligence. It would seem to be preferable therefore, to rely directly upon the same conception as that which is adverted to in the preceding paragraph, and treat his exemption as an appropriate deduction from the fact that the physicians or surgeons employed by him are not his servants."

We have examined many authorities treating this question, and find ourselves in full accord with the statement from the quotation above, to the effect that the overwhelming weight of authority holds the employer under arrangements of this character, not accountable for the malpractice of the physician employed, unless he has failed to exercise due care in his selection. The reasons given by the authorities are varied—some of them holding to the doctrine that the employer is in the distribution of a trust fund devoted to charitable purposes, and for this reason could not be subjected to liability. In Tucker v. Mobile Infirmary Asso., 191 Ala. 572, 68 South. 4, L. R. A. 1915D, 1167, this court reviewed the authorities touching this doctrine, and repudiated the same, so far as it could have any application to a stranger or to one who secured the services of the hospital paying full compensation therefor. We do not consider that the case here in point bears any such analogy to the Tucker Case as to require an extensive discussion thereof, or any necessity to call attention to the points of differentiation. Indeed, the Missouri Court of Appeals in

Haggerty v. St. L., K. & N. W. R. Co., 100 Mo. App. 424, 74 S. W. 456, reached the conclusion that such an arrangement could not be classed as a charity within that doctrine; but we need not enter into a discussion of that question.

In the Tucker Case, supra, this court laid much stress upon the decision of the Supreme Court of Rhode Island, in Glavin v. R. I. Hospital, 12 R. I. 411, 34 Am. Rep. 675, and we are of the opinion that this decision states a correct solution of the question we have before us, and we take therefrom the following pertinent quotation:

"Here the physicians or surgeons are selected by the corporation or the trustees. But does it follow from this that they are the servants of the corporation? We think not. If A. out of charity employs a physician to attend B., his sick neighbor, the physician does not become A.'s servant, and A., if he has been duly careful in selecting him, will not be answerable to B. for his malpractice. The reason is that A. does not undertake to treat B. through the agency of the physician, but only to procure for B. the services of the physician. The relation of master and servant is not established between A. and the physician. And so there is no such relation between the corporation and the physicians and surgeons who give their services at the hospital. It is true the corporation has power to dismiss them, but it has this power not because they are its servants, but because of its control of the hospital where their services are rendered. They would not recognize the right of the corporation, while retaining them, to direct them in their treatment of patients."

The Tennessee court, in Quinn v. K. C. M. & B. R. Co., 94 Tenn. 713, 30 S. W. 1036, 28 L. R. A. 552, 45 Am. St. Rep. 767, also rested the conclusion of nonliability for the malpractice of the physician, upon the ground that the relation of master and servant, in the sense of the doctrine of respondeat superior, did not apply between the employer and the physician, pointing out that, in such relationship, the employer has no control over the physician, as he renders services requiring such training, skill, and experience, the exercise of which must be in accordance with his best judgment and without interference. The Missouri court, in the case of Haggerty v. St. L., K. & N. W. R. Co., supra, reached a like conclusion. In discussing this question, that court said:

"Railroad companies must see that their servants are cautious in operating trains, make all needful regulations, select their employees with that end in view, and discharge them when they are careless and unskillful. The application of the rule in question is especially called for when the misfeasance of the employee happens while he is engaged about the main business of his employer. In cases like this the surgeon is not regarded as sustaining in full measure the relation of servant to the railway com-

pany. That relation carries the right of direction and control of the servant by the master as to the mode in which the former shall do his work; and when an employer, instead of reserving in terms or by implication the right of direction, contracts for the exercise of independent judgment and skill on the part of the person employed, the latter is often regarded as a separate contractor, and alone responsible for his torts. * * *

"The defendant company was not primarily engaged in ministering to sick and disabled persons for profit, but, when it gave such ministrations, did so as an incident to its regular business. There is little likelihood of railway companies or other employers becoming careless in the selection of physicians to wait on employees; and, as their business managers and superintendents are not selected for their expert knowledge of medical and surgical matters, they are unfit to supervise the work of physicians, and therefore the doctrine of respondeat superior cannot well be applied to such matters. We think these are the real reasons why the courts have refused to extend the rule to them; and we need not be troubled because this course is inconsistent with the general doctrine that masters are answerable for the torts of servants, since the law aims at practical rather than theoretical ends, and regulates acts with reference to their consequences instead of their logical connection. The precedents, without exception, hold that, unless the evidence shows want of care in the selection of the surgeon, the servant injured by malpractice has no recourse against his employer."

To like effect is the opinion of the Massachusetts court in Pearl v. West End R. Co., 176 Mass. 177, 57 N. E. 339, 49 L. R. A. 826, 79 Am. St. Rep. 302, where the opinion states:

"There is no more distinct calling than that of the doctor, and none in which the employee is more distinctly free from the control and direction of his employer."

See, also, Pittsburgh R. R. Co. v. Sullivan, 141 Ind. 83, 40 N. E. 138, 27 L. R. A. 840, 50 Am. St. Rep. 313; Myers v. Holborn, 58 N. J. Law, 193, 33 Atl. 389, 30 L. R. A. 345, 55 Am. St. Rep. 606; U. Pac. R. R. Co. v. Artist, 60 Fed. 365, 9 C. C. A. 14, 23 L. R. A. 589; So. Florida R. Co. v. Price, 32 Fla. 46, 13 South. 638; A. C. L. v. Whitney, 62 Fla. 124, 56 South. 937; 26 Cyc. 1082; Guy v. Lanark F. Co., 72 W. Va. 728, 79 S. E. 941, 48 L. R. A. (N. S.) 536; Youngstown Park & F. Co. v. Kessler, 84 Ohio St. 74, 95 N. E. 509, 36 L. R. A. (N. S.) 50, and note, Ann. Cas. 1912B, 933; Tex. Cent. R. Co. v. Zumwalt, 103 Tex. 603, 132 S. W. 113, 30 L. R. A. (N. S.) 1206, and note.

The case of Thomas v. T. C., I. & R. R. Co., 178 Ala. 580, 59 South. 627, was breach of contract for failure to furnish medical attention as agreed, and the question there determined is without application here. The same may be said of the case of S.-S. S. &

I. Co. v. Taylor, 16 Ala. App. 241, 77 South. 79, with the additional comment that this case does not appear to have been brought before this court for reveiw.

We concede that the two authorities, relied upon by appellant (Texas Coal Co. v. Connaughten, 20 Tex. Civ. App. 642, 50 S. W. 173, and Sawdey v. Spokane Falls & N. R. Co., 30 Wash. 349, 70 Pac. 972, 94 Am. St. Rep. 880), support the theory of liability, as contended for by appellant; but the reasoning of these authorities is not sufficient to convince us of their correctness or of any error in the holding of the overwhelming weight of opinion in other jurisdictions.

[2] While it may be conceded the arrangement for the employment of a physician for its employees was within the broader powers of the defendant corporation, yet it was not created for that purpose, but for the mining of coal and its preparation for the market, and the securing of medical and hospital services was but a mere incident. As said by the Massachusetts court, there is no more distinct calling than that of a physician, and none in which the employee is more distinctly free from the control or direction of his employer. Those to whom the defendant must commit the transaction of its business are not required or expected to be able to exercise any expert knowledge as to medical or surgical matters, and are unfit to supervise the work of physicians. The law in its administration should be reasonable and practical, not merely theoretical, and we approve the logic of the cases above cited, that the doctrine of respondeat superior is without application, and we rest our conclusion thereon.

It results that, in our opinion, the action of the trial court may very properly be sustained upon this ground, and the judgment granting a new trial is accordingly affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.