**UNION CARBIDE & CARBON CORPORATION, Appellant,**

v.

**James A. STAPLETON, Appellee.**

**No. 12535.**

United States Court of Appeals
Sixth Circuit.

Oct. 5, 1956.

Vergeer & Samuels, Duane Vergeer, Portland, Or., for appellant.

Sabin & Malarkey, Verne W. Newcomb, Portland, Or., for appellee.

Before STEPHENS, CHAMBERS, and HAMLEY, Circuit Judges.

Clyde W. Key, Knoxville, Tenn., for appellant.

Olen Henderson, Knoxville, Tenn., Ben F. McAuley, Knoxville, Tenn., on brief, for appellee.

Before SIMONS, Chief Judge, and ALLEN and STEWART, Circuit Judges.

STEWART, Circuit Judge.

This is an appeal from a judgment for damages for personal injuries entered upon a jury's verdict in a diversity of citizenship case.

The appellee, James A. Stapleton, entered the employ of the appellant company as a uniformed plant guard in 1947 when the company took over the operation of the so-called "Y–12" plant at Oak Ridge, Tennessee. Stapleton had originally been employed as a guard at the Y–12 plant in 1944 by a predecessor company, and all that company's personnel records, including Stapleton's, were turned over to the appellant company in 1947 when it took over the plant's operation.

Stapleton had served overseas in the first world war and had been in a mustard gas attack, receiving only first aid treatment at the time. About five years after the war he had had an X-ray of his lungs made by a private physician for the purpose of applying for a disability pension. The physician advised him that the X-ray disclosed a gas spot on his left

lung, but that it was dry in nature and should never give him any trouble.

Both the appellant company and its predecessor maintained a medical department staffed by physicians and nurses in full time employ. Plant employees were required to report periodically to this medical department for physical examinations. From the time he was first employed in 1944 until February, 1952, fourteen X-rays were made of Stapleton's chest and lungs at this medical department. These X-rays were interpreted by the department staff as indicating that Stapleton was suffering from an arrested case of pulmonary tuberculosis, but that during the eight year period between the first and last X-ray examinations no significant change had occurred in the condition of his lungs. These interpretations and findings were entered in Stapleton's medical records kept in the appellant company's custody.

Dr. Ann Robinson of the appellant's medical department testified that she advised Stapleton in 1944 that he had tubercular lungs, but that the condition was apparently arrested, and that she further advised him of what symptoms would indicate that his condition might be deteriorating, in which case he should immediately get in touch with his private physician or come back to the appellant's medical department. She testified that she had had repeated discussions of this nature with Stapleton between 1944 and 1952. Stapleton denied that he had ever been told by anyone in the appellant's employ that he had a tubercular condition. He conceded that Dr. Robinson had told him in 1951 that he had a spot on his lung which did not seem to be getting any worse, but he stated that the word "tuberculosis" was not mentioned and that he had assumed that the spot Dr. Robinson referred to was the same one discovered by the physician who had X-rayed his chest after his discharge from the Army.

Stapleton last worked for the appellant company on February 12, 1953, almost a year after the last X-ray examination was made. He went home that day because of illness and stayed there for the next two months, consulting a private physician in February and another one in March. On April 10, 1953, the second physician made an X-ray examination of his chest and lungs and discovered that he was suffering from active pulmonary tuberculosis. Stapleton was thereupon taken to a veterans' hospital where he remained at the time of the trial of this case, totally and permanently disabled by his tubercular condition. There was evidence to support a finding that Stapleton's personal physician would have made an X-ray examination at an earlier time if Stapleton had not informed him, "he had been X-rayed at Oak Ridge and that they told him he was alright."

The complaint in this action was filed December 8, 1953. It was grounded upon the negligence of the appellant company in failing to disclose to Stapleton that he was suffering from tuberculosis. It alleged that had he been apprised of his condition he would have had an opportunity to seek medical treatment which would have arrested the onslaught of the disease.

In defense, the appellant company denied the factual allegations of the complaint, alleging that Stapleton had been completely and accurately informed that he was suffering from apparently quiescent tuberculosis, and cautioned as to the care he should exercise. The appellant also interposed three affirmative defenses: (1) that the action was barred by the Tennessee statute of limitations; (2) that since the appellant had exercised ordinary care in the employment of the physicians who examined Stapleton it was not liable to him as a matter of law even if they were negligent, upon the theory that by their very calling, physicians must be classified as independent contractors; and (3) that Stapleton was guilty of contributory negligence.

■ Whether Stapleton was informed by his employer of his tubercular condition, whether the failure to inform him was a proximate cause of his permanent total disability, and whether he was guilty of contributory negligence in not soon-

er learning for himself that he was afflicted, are questions no longer in issue. Substantial evidence on both sides of these questions was before the jury, and the verdict rendered compels us to accept as facts that the appellant's physicians never informed Stapleton of his condition, that he learned of it for the first time in April, 1953, that he would not in the exercise of ordinary care have learned of it earlier, and that the failure to inform him was a proximate cause of his total disability.

The issues that remain on this appeal, therefore, are whether the failure of the appellant's physicians to advise Stapleton of his tubercular condition could support a cause of action against the appellant, and whether, if there was such a cause of action, it was barred by the statute of limitations. The various matters assigned as error by the appellant are for the most part simply different aspects of these two fundamental issues.

In order to put these issues into proper perspective, it is as important to emphasize what questions are not involved in this case as it is to recognize those that are. It should thus be pointed out that there was no proof whatever of negligence on the part of the appellant's physicians in the diagnosis of Stapleton's condition. All the expert witnesses agreed that the diagnosis of inactive tuberculosis which was made and recorded in the company's files was an accurate one. There was no evidence that the inactive tuberculosis which Stapleton had throughout the period he was being periodically examined was caused by fault of any kind on the part of the appellant's physicians. In short, this was not an action for malpractice.

It follows that, despite the briefs and arguments of counsel for the parties to the contrary, this case does not present the question of when, if ever, a principal may be liable for the negligent failure of a carefully selected physician in his employ to exercise the skill and judgment of a reasonably prudent and careful physician. See Quinn v. Kansas City, M. & B. Railroad Co., 1895, 94 Tenn. 713, 30

S.W. 1036, 28 L.R.A. 552; cf. Knox v. Ingalls Shipbuilding Corporation, 5 Cir., 1947, 158 F.2d 973; Mrachek v. Sunshine Biscuit, Inc., 1954, 308 N.Y. 116, 123 N. E.2d 801; see cases collected in 35 Am. Jur., Master and Servant, § 111.

The question here, rather, is whether the appellant itself had a duty to warn Stapleton of a danger known to it and unknown to him. Written records of the detailed and accurate findings of the appellant's physicians were, from the first examination to the last, in the custody of the appellant company. To have notified Stapleton of these findings would have been a simple matter, not requiring the professional skill of a physician. Disclosure could perhaps most conveniently have been made by personnel in the appellant's medical department, but the information could have been imparted by almost any agent of the appellant.

Failure of the appellant to disclose to Stapleton what its records showed his condition to be was clearly a violation of its duty to exercise ordinary care for his safety. By remaining silent, the appellant permitted Stapleton to rely upon a tacit assurance of safety despite its knowledge of the existence of danger. Prosser on Torts, § 32, page 146 (1955 Ed.). To warn Stapleton of a known but hidden defect on its property would have been appellant's clear duty. Westborne Coal Co. v. Willoughby, 1915, 133 Tenn. 257, 180 S.W. 322; Illinois Cent. R. Co. v. Nichols, 1938, 173 Tenn. 602, 118 S.W.2d 213; Phillips v. Harvey Co., 1954, 196 Tenn. 174, 264 S.W.2d 810. Its duty to warn him of the known but hidden danger here was no less clear.

The point is made by appellant's counsel that an employer is under no obligation whatever to determine an employee's physical condition in the first place, and that the appellant should not be penalized for voluntarily undertaking more than its legal duty. That the appellant had no obligation to give Stapleton a physical examination we can accept without qualification. But, when it undertook to do so, Stapleton was entitled to and did rely on the expectation that he would be told of

any dangerous condition actually disclosed by that examination. The appellant was therefore liable for injury to Stapleton caused by its negligent omission to advise him of his tubercular condition. Prosser on Torts, § 38, pages 185–188 (1955 Ed.); Restatement of Torts, § 325; Perrone v. Pennsylvania R. Co., 2 Cir., 1943, 136 F.2d 941, 943; Conowingo Power Co. v. State of Maryland, 4 Cir., 1941, 120 F.2d 870, 874.

There remains the question of whether Stapleton's cause of action was barred by the one year statute of limitations applicable to actions for personal injury in Tennessee. Section 8595 of the Williams Tennessee Code. This action was brought more than a year after Stapleton was last examined at the appellant's medical department, but within a year after he left the appellant's employ and within a year after he discovered his tubercular condition.

 It is argued on behalf of Stapleton that until he discovered that he had tuberculosis, the statute of limitations was tolled because appellant fraudulently concealed from him the existence of his cause of action. That the fraudulent concealment of a cause of action can operate to toll a statute of limitations is a doctrine which has long been accepted in Tennessee as elsewhere. Herndon v. Lewis, Tenn.Ch.App.1896, 36 S.W. 953; Boro v. Hidell, 1909, 122 Tenn. 80, 120 S.W. 961; Hudson v. Shoulders, 1932, 164 Tenn. 70, 45 S.W.2d 1072; see Patten v. Standard Oil Co. of Louisiana, 1933, 165 Tenn. 438, 55 S.W.2d 759; Turner v. N. C. & St. L. Railway, Tenn.1955, 285 S.W.2d 122. But that doctrine has no place in this case, for two reasons. There was no evidence to support a finding that the failure of the personnel in appellant's medical department to inform Stapleton of his tubercular condition was a deliberate or willful misrepresentation. Cf. Hudson v. Shoulders, 1932, 164 Tenn. 70, 45 S.W.2d 1072. Secondly, the failure to disclose in this case was itself the gist of the lawsuit. To invoke the doctrine of fraudulent concealment, it is the existence of facts giving rise to a cause of

action, independent of the concealment, that must have been withheld. The fact that Stapleton had inactive tuberculosis was not the basis of his cause of action; its basis was the failure of the appellant to disclose this to him.

We turn then to the direct question whether this action accrued within a year before it was brought. The appellant insists that the Tennessee decisions, particularly Bodne v. Austin, 1928, 156 Tenn. 366, 2 S.W.2d 104 and Albert v. Sherman, 1934, 167 Tenn. 133, 67 S.W.2d 140, compel the conclusion that the one year period began to run when Stapleton was last examined. We do not so read those cases.

Each of the cases was decided upon a demurrer to the plaintiff's declaration, and in each the Supreme Court of Tennessee affirmed the lower court's decision that the allegations of the declaration showed that the plaintiff's cause of action was barred by the one year statute of limitations.

Bodne v. Austin was an action against a dentist for negligently leaving the root of a tooth in a patient's mouth. The patient's husband filed suit nine years after the dental operation, but within a year after the defendant's negligence was first discovered by the plaintiff and his wife. It was alleged that although the patient continued under the defendant's treatment, " 'for a long time after said dental operation' * * * defendant * * * permitted the broken tooth to remain unextracted, 'and carelessly and negligently failed to disclose the fact to plaintiff's wife' ". [156 Tenn. 366, 2 S. W.2d 105.] The court emphasized that, "The averment that the failure to disclose the breach of duty was careless and negligent implies a lack of knowledge on the part of the defendant rather than otherwise." The opinion also pointed out that, "Plaintiff's declaration does not aver that his wife was under the care of the defendant at any time within the period of one year preceding the commencement of the action." Upon the allegations as thus construed by the court,

it decided that the cause of action was barred.

Albert v. Sherman was likewise a malpractice action against a dentist for negligently leaving part of an extracted tooth in a patient's gum. Suit was filed more than two years later, but within a year after the plaintiff allegedly first suffered damage. The court pointed out that there was no allegation of continued treatment; "indeed, no averment that the plaintiff ever saw the defendant again after the tooth was extracted." [167 Tenn. 133, 67 S.W.2d 141.] The court also construed the declaration to state that the defendant dentist had no actual knowledge that he had left the root of the tooth in the plaintiff's mouth. The question for decision thus was, in the court's words, "whether the period of limitation * * * in an action of this kind commences at the date of the wrongful act or omission or whether it commences at the date of the damage occasioned." The court concluded that the cause of action accrued when the wrongful act or omission took place.

In both these decisions therefore the Supreme Court of Tennessee was expressly dealing with situations where the defendant did not know of the plaintiff's impaired condition and where there had been no relationship between the parties during the year before suit was filed. By contrast, the appellant in the present case knew from first to last that Stapleton had tuberculosis, and Stapleton remained in its employ until a few months before this action was filed.

■ ■ Beyond enjoining us to determine "the date of the wrongful act or omission," the Tennessee decisions therefore leave unanswered the question presented here. The answer is implicit, however, in what has been said regarding the nature of the duty that the appellant violated. As Stapleton's employer the appellant became aware that Stapleton had tuberculosis through its voluntary physical examination of him. It then became the appellant's duty in the exercise of ordinary care to inform him of his condition. That duty persisted through-

out the period of the employer-employee relationship, the relationship which afforded both the occasion for the appellant's knowledge and the opportunity to impart its knowledge to him. We conclude that the date of the appellant's last negligent act or omission was the date that Stapleton left the appellant's employ, and that this action was therefore not barred by the statute of limitations.

We find no error prejudicial to the appellant in the court's instructions to the jury. The instructions on the doctrine of fraudulent concealment could prejudice no one but Stapleton, in view of our conclusion as to when the period of limitation began to run.

The judgment of the district court is affirmed.