[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 661 
This petition for writ of certiorari is the result of a judgment by the Circuit Court of Jefferson County holding that petitioner's claim to workmen's compensation benefits was barred by the statute of limitations.
Petitioner, Alfred Belser, was employed by respondent, American Cast Iron Pipe Company, Inc. (herein referred to as ACIPCO), for thirty-five years. Belser worked as a pipe grinder and painter in the foundry and cleaning shed at ACIPCO. In October of 1975 Belser retired from ACIPCO. He was sixty years of age. For approximately nine months prior to his retirement, Belser did not work due to a pulmonary embolism which he suffered in early 1975. During this period he received "sick pay" from his employer.
Upon his retirement, Belser applied for social security benefits. As a result of the medical examination conducted by social security, Belser was found to be suffering from pneumoconiosis which is a condition characterized by the permanent deposition of substantial amounts of particulate matter in the lungs and by the reaction of bodily tissues to the presence of this matter. Apparently this was the first time Belser learned that he was inflicted with pneumoconiosis.
In September of 1976 Belser commenced an action seeking to recover workmen's compensation benefits from his former employer, ACIPCO. A trial was subsequently held and after the presentation of evidence by both parties the trial court found that Belser was disabled due to occupational pneumoconiosis and that as a result of this condition he was unemployable. The court made two additional rulings in its judgment which provide the issues on which this review is based. First, the trial court held that the "sick pay" which Belser had received from his employer during the final months of his employment was neither workmen's compensation payments nor money in lieu of workmen's compensation and therefore the statute of limitations was not tolled by the receipt of these "sick pay" benefits. Second, the court concluded that there was no legal fraud on the part of ACIPCO which would toll the statute of limitations. Consequently, the trial court determined that Belser's claim for workmen's compensation was filed nineteen months after the date Belser was last exposed to the hazard of occupational pneumoconiosis and was thereby barred by the one year statute of limitations applicable to such claims. Title 26, section 313 (10), Code of Alabama 1940 (Recomp. 1958) (currently found in Title 25, chapter 5, section 147, Code of Alabama 1975). From that judgment Belser seeks review by this court.
The first issue we will consider concerns the trial court's finding that the "sick pay" which Belser received from ACIPCO was neither workmen's compensation benefits nor payments in lieu of workmen's compensation. As a result of this finding, the *Page 662 
court held that the "sick pay" provided by ACIPCO did not toll the statute of limitations.
Title 26, sections 296 and 313 (10), Code of Alabama 1940 (Recomp. 1958) (currently found in Title 25, chapter 5, sections 80 and 147, Code of Alabama 1975) permit the payment of compensation or the payment of money in lieu of compensation to toll the one year statute of limitations relevant to workmen's compensation cases. However, in B.F. Goodrich Co. v.Parker, 282 Ala. 151, 209 So.2d 647 (1967), our supreme court stated that the test for determining whether payments of regular wages to an employee constituted "payments of compensation" was as follows: (1) whether the employer was aware, or should have been aware, that the payments it provided were compensation; (2) whether the payments in effect recognized the employee's claim; and (3) whether the evidence indicates that the employer paid for more than he received. SeeHead v. Triangle Construction Co., 274 Ala. 519, 150 So.2d 389
(1963). We believe this test is applicable to the present case, particularly in view of the fact that "sick pay" is generally not recognized as compensation under the provisions of a workmen's compensation act. Bell v. Gulf Insurance Co.,313 So.2d 277 (La.App. 1975); Blanchard v. Liberty MutualInsurance, 280 So.2d 592 (La.App. 1973).
The record in this case reveals that after February of 1975 Belser did not actually work at ACIPCO. Indeed, from February of 1975 until his retirement in October of the same year Belser received "sick pay" equal to six and one-half hours per day times his normal hourly wages. The "sick pay" was provided pursuant to the fringe benefit section of the ACIPCO policy manual and statements found in the ACIPCO employee handbook. Belser went to the time office of American Cast Iron Pipe to get his "sick pay" checks and these checks had a "sick pay journal slip" attached to them. This slip was for the employee's records and the slip itself contained several headings, including a specific heading which disclosed whether workmen's compensation payments were being made to the employee. Any such payments were listed as deductions from the employee's sick pay. And, according to copies of the "sick pay journal slips" retained by the ACIPCO time office, no workmen's compensation benefits were paid to Belser from February of 1975 until his retirement in October of 1975. Moreover, evidence presented at trial revealed that workmen's compensation checks were received at the personnel office of ACIPCO. An employee of ACIPCO who worked in the personnel department testified that personnel records did not indicate that ACIPCO had ever paid workmen's compensation benefits to Belser.
Applying this evidence to the test established by B.F.Goodrich Co. v. Parker, supra, it is apparent that the employer was not aware that the "sick pay" which it provided Belser was a payment of compensation. Nor did the payments recognize Belser's claim to workmen's compensation since ACIPCO construed the payments as "sick pay" and thereby did not make any workmen's compensation deductions from Belser's "sick pay" check. Finally, the "sick pay" was paid to Belser as a fringe benefit to which Belser was entitled by virtue of his employment. Accordingly, ACIPCO did not pay for more than it received. Although Belser was receiving money even though he performed no labor, this money was "sick pay" which his employer was obligated to provide under the terms of company policy. Cf. Beatrice Foods Co. v. Clemons, 54 Ala. App. 150,306 So.2d 18 (1975).
Likewise, there was no evidence that the "sick pay" which Belser received was paid in lieu of compensation in view of the fact that when this money was paid, Belser was not yet aware of the condition upon which he ultimately based his demand for workmen's compensation. And there was insufficient evidence that ACIPCO was aware of the fact that Belser was suffering from pneumoconiosis and therefore sought to compensate him for this condition by means of "sick pay" benefits. Indeed, the evidence adduced at trial indicates that Belser received the sick leave pay in accordance *Page 663 
with an established company policy which treated all employees alike in regard to its sick leave plan.
The trial court's conclusion that the "sick pay" provided by ACIPCO did not constitute payments of compensation or payments in lieu of compensation for the purpose of tolling the statute of limitations was supported both in law and in fact. Therefore, we will not disturb the court's judgment in regard to this aspect of its review.
The second issue presented for our review concerns Belser's contention that the legal evidence adduced at trial failed to support the trial court's determination that no legal fraud was perpetrated on Belser by ACIPCO. Thus, Belser argues that the trial court's finding that the statute of limitations was not tolled was incorrect.
At the invitation of this court, our supreme court recently held that legal fraud committed by an employer against an employee will toll the statute of limitations in a workmen's compensation case. Dorsey v. United States Pipe Foundry Co., Ala., 353 So.2d 800 (1977). Moreover, the holding in Dorsey
encompassed the fraudulent concealment of facts upon which the liability of the employer depends. And significantly, the supreme court's opinion in the Dorsey case also indicated that an employer may be estopped from asserting the statute of limitations as a defense to a claim for workmen's compensation. However, the present case was decided prior to the supreme court's decision in Dorsey and the issue presented to and decided by the trial court concerned legal fraud; there was no contention made in regard to the theory of estoppel. Consequently, we are limited in our review to the theory on which the case was tried. The theory litigated in this instance was fraud and we cannot enlarge that theory on appeal to include estoppel.
The decision in Union Carbide Carbon Corp. v. Stapleton, 237 F.2d 229 (6th Cir. 1956) recognized that an employer's failure to inform an employee of a disease or medical condition disclosed by a medical examination may constitute fraudulent concealment and thus operate to toll the applicable statute of limitations. However, before the failure of an employer to inform an employee of the results of a medical examination disclosing the employee's condition can be held to constitute fraudulent concealment for purposes of tolling the relevant statute of limitations, the employee must prove: (1) that the employer knew, or should have known, through its medical examination staff that the employee was suffering from a disease or infirmed condition, Jines v. General Electric Co.,303 F.2d 76 (9th Cir. 1962); (2) that the employer knew, or should have known, that the employee did not know of his disease or condition, E.I. Du Pont De Nemours Co. v. Brown,102 F.2d 786 (3rd Cir. 1939); (3) that the employee did not have reason to understand either the nature and gravity of his condition or its relation to his employment, 3 Larson's Workmen's Compensation Law, Notice and Claim Periods, § 78.41; and (4) that the employer (or the medical staff provided by the employer)[1] did in fact fail to disclose to the employee that which it had an obligation to disclose, i.e. the nature and extent of the employee's disease or condition. Title 6, chapter 5, section 102, Code of Alabama 1975; Union Carbide CarbonCorp. v. Stapleton, supra.
In light of the four elements mentioned above we are unable to say that the *Page 664 
finding of the trial court that there was no fraudulent concealment on the part of ACIPCO was incorrect in either law or in fact.
In examining the elements which must be proven in cases of this nature, it is reasonable to conclude that ACIPCO should have known that Belser (who had only a sixth grade education) did not know that he had contracted pneumoconiosis. Likewise, it is difficult to imagine how Belser could be deemed to have knowledge of his condition or its relation to his employment in view of the fact that the medical doctor who treated Belser professed no knowledge of the latter's condition.
On the other hand, the evidence presented at trial does not reveal that ACIPCO had actual, subjective knowledge of Belser's condition or that ACIPCO, while in possession of such knowledge, failed to disclose it to him. Consequently, the critical question is whether, under the circumstances of this case and in the exercise of reasonable care, ACIPCO should have known that Belser was suffering from pneumoconiosis prior to the discovery of the existence of that condition by the physicians employed by social security. Title 6, chapter 2, section 3, Code of Alabama 1975; Jines v. General Electric Co.,supra. The evidence in the record before us falls short of establishing that ACIPCO lacked the reasonable care necessary for the trial court to hold that it should have known of Belser's condition.
ACIPCO maintains a medical department which examines and treats the employees of American Cast Iron Pipe Company. Accordingly, ACIPCO is under a duty to disclose (or have its medical department disclose) a condition which its medical staff has determined to exist or which the staff in the exercise of reasonable care should have diagnosed.
In the present case the physician who treated Belser on behalf of ACIPCO testified that until the pulmonary embolism suffered by Belser in early 1975, Belser had never complained of symptoms (such as shortness of breath) which would be consistent with a diagnosis of pneumoconiosis. Moreover, this doctor stated that he had treated Belser throughout the latter's employment at ACIPCO and that Belser had many medical problems during his employment with ACIPCO including gross obesity, arthritis, chronic skin problems, thrombophlebitis, a pulmonary embolism, and mild congestive heart failure. This physician, however, testified that he was never aware that Belser had occupational pneumoconiosis and that he never diagnosed Belser as having that disease.
On the other hand, there was some evidence contained in the medical chart which ACIPCO maintained on Belser that indicates that the physician who treated Belser might possibly have discovered that Belser had incurred occupational pneumoconiosis. Specifically, chest x-rays of Belser taken in 1957 and 1971 were interpreted by two different radiologists as revealing "slight bilateral fibrosis" and "diffused, nodular, pulmonary fibrosis." Nonetheless, Belser's physician at ACIPCO stated that while the discovery of bilateral or pulmonary fibrosis could be consistent with a diagnosis of pneumoconiosis, such findings could also be consistent with a number of other medical problems. Furthermore, the physician testified that he concluded the x-rays taken in 1957 and 1971 were subject to varying interpretations and that in the absence of any complaints on the part of Belser which would have alerted him to the fact that Belser was suffering from pneumoconiosis, he (the physician) did not endeavor to make a complete and comprehensive review of Belser's medical chart, including his x-rays. Finally, the physician stated that x-rays of Belser taken subsequent to 1971 were subject to interpretations which were inconsistent with a diagnosis of pneumoconiosis.
As the facts set out above reveal, there was a significant amount of evidence to the effect that Belser's primary physician at ACIPCO did not know that Belser was suffering from pneumoconiosis. And where confidential relations exist, such as those between a physician and patient, knowledge of the facts concealed is a necessary element of fraudulent concealment.Hudson v. Moore, 239 Ala. 130, 194 So. 147 (1940). *Page 665 
The evidence is also sufficient to support the trial court's conclusion that the physician employed by ACIPCO should not have known of Belser's condition. It is incumbent upon the complaining party in cases of this nature to establish that subject to the standard of care with which he is charged, a prudent, skilled and trained physician should have known of or been able to diagnose the patient's condition. But a physician is not required to disclose to a patient that which the physician surmises from conjecture or speculation. Nardone v.Reynolds, 333 So.2d 25 (Fla. 1976). Moreover, because differences in professional "judgment" play a large role in the diagnosis of patients, testimony of other physicians that they would have done something different, standing alone, is not sufficient in a workmen's compensation case to sustain a determination that an employer's medical staff should have known of the employee's condition and that their failure to know and disclose that condition constituted fraudulent concealment for purposes of tolling the applicable statute of limitations. See Jines v. General Electric Co., supra. Instead, the local community standard of practice must be shown and that standard is applicable to cases where an alleged faulty diagnosis (or inability to diagnose) results in the failure of an employer (or its medical staff) to disclose a disease or condition to an employee. See Jines v. General Electric Co.,supra.
In the instant case the evidence does support the conclusion that the physician employed by ACIPCO did not know of Belser's condition; moreover, there is no evidence that his inability to diagnose the ailment which ultimately disabled Belser was at variance with the standard of care of a prudent, skilled and trained physician in that locality. Accordingly, it cannot be said that the physician possessed (or should have possessed) the knowledge of certain facts which he then fraudulently concealed from Belser. And if the physician lacked such knowledge, it is reasonable to conclude that in this instance the employer likewise did not know of its employee's condition. Thus, we are not persuaded that legal fraud in the nature of the fraudulent concealment of a known fact was supported by the evidence.
For the above stated reasons, the judgment of the trial court is affirmed.
MOTION TO DISMISS APPEAL AS FRIVOLOUS OVERRULED.
MOTION TO STRIKE PETITIONER'S REPLY BRIEF GRANTED.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.
[1] In reviewing the trial court's action in this case we must note that this is not an action for malpractice. Despite the brief and arguments of counsel for ACIPCO to the contrary, the issue here is not a principal's liability for the negligent selection of a physician. In Parsons v. Yolande Coal CokeCo., 206 Ala. 642, 91 So. 493 (1921), our supreme court held that an employer was not liable for the actions of a physician retained by the employer to provide medical treatment for its employees. However, Parsons involved a malpractice suit against the employer, and the widely adhered to rule in such situations is that the employer may be found liable only if it failed to exercise due care in the selection and retention of its medical personnel. See Jines v. General Electric Co., 303 F.2d 76 (9th Cir. 1962); Union Carbide Carbon Corp. v. Stapleton, 237 F.2d 229 (6th Cir. 1956).