390 So.2d 628 (1980)
Ralph W. BLACKMON
v.
R. L. ZEIGLER COMPANY, INC.
Civ. 2212.
Court of Civil Appeals of Alabama.
July 23, 1980.
Rehearing Denied August 20, 1980.
*629 John W. Kelly, III, of Sikes, Kelly, Edwards & Bryant, Selma, for appellant.
J. Garrison Thompson of Pitts, Pitts & Thompson, Selma, for appellee.
HOLMES, Judge.
This is a workmen's compensation case.
The Circuit Court of Dallas County found the employee's claim for workmen's compensation benefits was barred by the statute of limitations. The employee appeals. We affirm.
The dispositive issue is whether the one year statute of limitations applicable to workmen's compensation suits began to run on July 11, 1975, therefore barring the employee's suit which was filed on August 30, 1976.
The record reveals the following:
On June 5, 1975, the employee was employed as a meat grinder for appellee, R.L. Zeigler Company, Inc. While performing his duties on that date, he injured his back in attempting to shovel meat into a hopper or grinder.
As a result of this injury, the employee went to a doctor and missed several days work in June. After his return to work he continued to complain of pain in his back. Finally, in late October or early November of 1975, he allegedly reinjured or aggravated *630 his back condition. After this incident, he missed several weeks of work in November and December.
There was medical testimony to the effect that the employee suffered from spondylolisthesis which results from repeated heavy forced extension of the back. This testimony indicated that once this condition exists, an unguarded twist or accident can cause the disease to become symptomatic. On March 2, 1977, the employee underwent a spinal fusion operation.
It is uncontroverted that on July 11, 1975, the employee received workmen's compensation benefits for the June absence from work. Zeigler's insurance carrier issued a check to the employee who in turn endorsed the check over to Zeigler.
This procedure was apparently followed pursuant to Zeigler's "sick pay" policy. Under this policy, an employee would receive a specified percentage of his salary if absent from work due to sickness or injury. If the absence was due to an on-the-job injury, Zeigler's insurance clerk would prepare a report and forward it to the compensation carrier. The carrier would then issue a check to the employee who would in turn endorse it over to Zeigler provided the check was for less than the amount he had received as sick pay.
Although the record is not abundantly clear, the employee missed work in October of 1975 due to the recurrence of an off-the-job injury. He received sick pay for this, but not compensation. The insurance clerk testified she informed the employee this was not a compensable injury.
As indicated, the employee again missed time in November and December of 1975 due to the recurrence or aggravation of the back injury. Once again, he received sick pay but no checks from the compensation carrier were forthcoming. Apparently, the insurance clerk did not prepare a report to be sent to the carrier for this time period because she believed the employee's absence was caused by the off-the-job injury.
Several employees of Zeigler, including the insurance clerk and the office manager, testified that Zeigler's sick pay policy had been fully explained to the employee and stated all employees had a written copy thereof. Furthermore, the insurance clerk stated the employee came to see her several times a week during the period he was absent from work to discuss the nature of the payments. Both denied the employee's allegations that they had told him he was receiving compensation and not sick pay.
There was further testimony that after the June 5, 1975, injury, the employee sought light duty work as a security guard. This was denied because he was "too young and irresponsible." However, apparently after the November recurrence of the injury, he was transferred to another job with the same work classification and the same rate of pay. The employee testified the work load on the new job did not differ from that of a meat grinder with the exception that he was no longer required to do heavy lifting.
On appeal, the employee through able counsel advances several theories which, if accepted, would enable him to escape the bar of the one year statute of limitations. He first argues the measuring date of the accident should be November of 1975, when he allegedly became disabled, and not June 5, 1975, the date his back problems first became symptomatic.
He further notes that when compensation payments have been made, the limitations bar does not take effect until one year has expired since the making of the last payment. See, § 25-5-80, Code of Ala.1975. He therefore argues that the November and December sick pay should be deemed compensation for purposes of postponing the running of the statute. Alternatively, he contends that he received compensation when he was transferred to what he would characterize as a "light duty" job.
Finally, he argues that he was told the sick pay he received in November was compensation. He concludes he was the victim of legal fraud and that such fraud should toll the running of the statute.
*631 At the outset, we note that this court reviews workmen's compensation cases by writ of certiorari. Therefore, we do not look to the weight of the evidence as to any fact found by the trial court, but simply look to see if there is any evidence to support those findings. Mobile Pain Mfg. Co. v. Crowley, 56 Ala.App. 673, 325 So.2d 182 (1975). That is to say, where there is conflicting testimony in a workmen's compensation proceeding, and there is evidence to support the trial court's findings, those findings are conclusive. Young v. City of Huntsville, Ala.Civ.App., 342 So.2d 918 (1976), cert. denied, Ala., 342 So.2d 924 (1977).
Turning to the employee's first argument, we conclude the trial court correctly decided that June 5, 1975 was the date of the employee's accident.
This conclusion is compelled by § 25-5-1(8), Code of Ala. 1975, which defines accident as an "unexpected or unforeseen event, happening suddenly and violently, with or without human fault, and producing at the time injury to the physical structure of the body ...." Clearly, this definition contemplates a reasonably definite period of time during which the injury manifests itself. See, United Telephone & Telegraph Co. v. Culliver, 271 Ala. 568, 126 So.2d 119 (1961).
In Davis v. Standard Oil Co. of Kentucky, 261 Ala. 410, 74 So.2d 625 (1954), the Supreme Court of Alabama reached a like conclusion, holding that under this definition, "accident" is not synonymous with "disability." There, the court said:
It appears that the courts have uniformly held that the time for filing a suit begins to run from the time of the happening or occurrence which later produced disability and not from the time a compensable injury or disability becomes apparent, where the act provides that the period of limitation runs from the date of the accident, as distinguished from the time of disability or other date.
261 Ala. at 415, 74 So.2d at 629-630.
On appeal, the employee argues for the first time that the disease which has occasioned his difficulties is an occupational disease. As this court will not entertain arguments not advanced at the trial level, we see no need to delineate the employee's contentions on this point. See, Hellums v. Hager, Ala.Civ.App., 360 So.2d 721, writ denied, Ala., 360 So.2d 724 (1978).
In any event, it would appear that the employee's back disease is not an occupational disease, even if caused by lifting, because there was no showing it was either due to hazards in excess of those ordinarily incident to employment or peculiar to the occupation of meat grinder. See, Young v. City of Huntsville, Ala.Civ.App., 342 So.2d 918 (1976), cert. denied, Ala., 342 So.2d 924 (1977).
Therefore, the date of the injury for purposes of § 25-5-80 is June 5, 1975, and the employee's suit, filed in August of 1976, is barred unless the employee received compensation payments in the year immediately preceding the filing.
As indicated, it is uncontroverted the employee received a compensation payment on July 11, 1975. At issue is the proper characterization of both the sick pay received in November of 1975 and the wages paid for the alleged light duty job assigned to the employee upon his return to work.
Turning first to the light duty job, we note it has been held that when an injured employee receives the same wages for lighter work upon returning to his job, such payment can be compensation under appropriate circumstances. Head v. Triangle Construction Co., 274 Ala. 519, 150 So.2d 389 (1963).
In Head, our supreme court said the correct rule involves the following issues: (1) whether the employer was aware, or should have been aware, that the payments were compensation, (2) whether the payments had the effect of a recognition of the employee's claim, and (3) whether the employer paid for more than he received. See also, B.F. Goodrich Co. v. Parker, 282 Ala. 151, 209 So.2d 647 (1967).
*632 Here, Zeigler paid the employee the standard wage for a job with the same classification as the one he had previously held. There was no evidence showing the employer could have gotten the job done for less. Furthermore, there was evidence the employee was denied an acknowledged light duty job as a security guard. The employee admitted the new job was no easier than that of a meat grinder, stating the only difference was in the amount of lifting. Clearly, there was evidence to support the trial court's finding the wages paid the employee did not amount to compensation. See, Head, supra.
Next, we address the contention that the sick pay was the equivalent of compensation.
In Belser v. American Cast Iron Pipe Co., Inc., Ala.Civ.App., 356 So.2d 659 (1978), this court, through Judge Bradley, held that although sick pay is generally not recognized as compensation, it may be so classified if certain conditions are met. In so ruling, we adopted the above referenced test laid down in Head, supra.
Applying these factors to the case at bar, we find there is ample evidence to support the conclusion Zeigler was not aware the sick pay was the equivalent of compensation. The company's insurance clerk specifically testified she believed the employee was missing work due to a noncompensable knee injury. It only follows that in making the payments Zeigler was not recognizing the employee's compensation claim. Indeed, no report was prepared or sent to the compensation carrier regarding the November recurrence of the back injury as would have been required under company policy. Likewise, Zeigler did not pay for more than it received. True, the employee was receiving money while missing work, but these payments were made under an established company policy which provided sick pay regardless of the nature of the injury. See, Belser, supra.
Finally, there was also evidence to support the trial court's finding that no legal fraud was practiced upon the employee. While it was held in Dorsey v. United States Pipe & Foundry Co., Ala., 353 So.2d 800 (1977), that fraud can toll the running of the statute of limitations, the court also said there must first be found acts by the employer which lead the employee to believe liability is admitted and will not be contested, or acts of the employer which either falsely misrepresent to the employee or falsely conceal from him the truth of the facts which liability depends.
Here, the employee testified he was told he would be compensated for the November recurrence of the injury. Likewise, he stated he was told the sick pay was compensation. However, the insurance clerk and office manager of Zeigler denied making such statements. What is more, the clerk stated that on several occasions she explained to the employee that he was receiving such pay and not compensation. The office manager testified he had explained the sick pay policy fully to the employee. Both denied making any misrepresentation to the employee at any time. We are therefore not prepared to say there was no evidence to support the trial court's finding.
We would further note the employee had actual knowledge of the company's procedures due to his June injury and another injury otherwise not relevant to this suit. After both incidents, he received compensation checks which he in turn endorsed over to Zeigler.
Although it is the policy of this court not to comment upon remarks made in dissent, in this instance the majority feels compelled to make several observations.
First, the employee, both at trial and on appeal, has argued he was the victim of fraud. That is to say, he has not relied upon a theory of estoppel. As this court said in Belser v. American Cast Iron Pipe Co., Inc., Ala.Civ.App., 356 So.2d 659, 663 (1978), where the employee also alleged fraud: "... [W]e are limited in our review to the theory on which the case was tried. The theory litigated in this instance was fraud and we cannot enlarge that theory on appeal to include estoppel."
*633 In any event, we fail to see why the employer is estopped from asserting the statute of limitations because of its "acts and representation to claimant from June 5, 1975 through its letter of December 3, 1975."
As we have pointed out, there was legal evidence to support the trial court's finding that the employee had been informed he was receiving sick pay, not compensation. Furthermore, he had actual knowledge of the company's policies and thus should have been aware something was amiss when he failed to receive compensation checks after his November absence from work.
We also fail to see how the December 3, 1975, letter to the compensation carrier could in any way serve as the basis of an estoppel. Nowhere does the dissent show how the letter misled the employee or caused him to detrimentally change his position. See, B.F. Goodrich Co. v. Parker, 282 Ala. 151, 209 So.2d 647 (1967). Indeed, there is no indication the employee even knew of the existence of this letter.
Neither does the majority find persuasive the dissent's conclusion that the employer, at least through December 3, 1975, did not know whether the November absence was compensable. The tests laid out in Head, supra, and Belser, supra, and even in Dorsey, supra, all look to some knowledge by the employer evidencing an acknowledgment of the employee's claim. Here, the dissent would have ignorance serve the same function and toll the running of the statute.
Finally, the dissent seems to rely on the medical payments made by the employer as forming a possible basis for estoppel. In answer, we would simply note our legislature has made it clear that medical payments, unlike compensation payments, do not toll the statute of limitations. See, § 25-5-1(1), Code of Ala. 1975; Sam's Place v. Middleton, 39 Ala.App. 481, 103 So.2d 812 (1958).
Suffice it to say the majority fails to see the necessity of judicially countermanding this legislative directive. If medical payments are not compensation, the employer should feel free to make them without fear of losing the benefit of the statute of limitations. If the dissent's logic were to be accepted, the result could well be the refusal of employers to make medical payments for deserving, although noncompensable, injuries.
Based upon the above, this case is due to be affirmed.
AFFIRMED. MOTION TO DISMISS APPEAL OVERRULED.
BRADLEY, J., concurs.
WRIGHT, P. J., dissents.
WRIGHT, Presiding Judge, dissenting.
I must respectfully dissent from the result of the opinion of the majority and from some of the statements contained in the opinion.
I recognize the efficacy of the citation of United Telephone & Telegraph Co. v. Culliver as authority for the necessity of a claimant establishing the occurrence of the statutory "accident." I acknowledge there must be some "injurious event;" however, it seems to me that to breathe new life into Culliver is to diminish the authority of B.F. Goodrich Co. v. Martin, 47 Ala.App. 244, 253 So.2d 37 (1971), cert. denied 287 Ala. 726, 253 So.2d 45 (1971); Pow v. Southern Construction Co., 235 Ala. 580, 180 So. 288 (1938); Gulf States Steel Co. v. Christison, 228 Ala. 622, 154 So. 565 (1934). Those cases stand for the proposition that the statutory requirement of an "accident" may be satisfied by a result as well as a "cause" and if the job caused the injury, it was by "accident" within the intent of the Workmen's Compensation Act. Albertville Nursing Home v. Upton, 383 So.2d 544 (Ala.Civ. App.1980); Newman Bros. Inc. v. McDowell, 354 So.2d 1138 (Ala.Civ.App.1977), cert. denied, 354 So.2d 1142 (Ala.1978); City of Tuscaloosa v. Howard, 55 Ala.App. 701, 318 So.2d 729 (1975).
I dissent from the affirmation of the judgment of the trial court upon authority of the case of Dorsey v. United States Pipe *634 & Foundry Co., 353 So.2d 800 (Ala.1977). That case was considered by certiorari upon the invitation of this court. 353 So.2d 797 (Ala.Civ.App.1977). The issue presented was whether the statute of limitation in a workmen's compensation claim could be tolled by legal fraud or estoppel. The Supreme Court in a statement of first impression of the law in this state said: "We hold, therefore, that when acts are done by the employer which lead the employee to believe that liability under the statute is admitted and will not be contested ... the running of the statute of limitations may be tolled and it is immaterial whether the employee relies upon actual fraud or mere estoppel...." The court further said: "In conclusion, we take note as did the United States Supreme Court in Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959), of the age-old maxim that, `no man may take advantage of his own wrong.' See also Mazer v. Jackson Insurance Agency, 340 So.2d 770 (Ala.1976)." 353 So.2d at 803.
In this case it is without conflict that it was the policy of the employer to file with its insurance carrier the report of an injury to an employee on the job. It was unnecessary for the employee to file a claim. He had only to inform the employer that he had been injured. It is further without conflict that claimant in this case informed his employer that he suffered an injury to his back on June 5, 1975. Acting upon that information, employer's clerk filed notice with the insurer and advised claimant to see a doctor. He saw a chiropractor and continued to see him for some time thereafter. He took off from work for several days. He was paid fifty-five percent of his wages by a company check according to a company policy on sick pay. Such sick pay was paid when an employee reported off from work with a physician's statement of cause. He received the same check whether he was injured on the job or just sick for some unrelated reason.
The company clerk stated that the insurance carrier, after receiving her report, decided whether workmen's compensation was due the employee.
The employee never knew whether he was to receive compensation until or unless he was called upon to come by the company's office and endorse a check issued by the insurer and sent to the company. If the compensation check was greater than the amount he had been paid by the company he got the excess, otherwise he merely endorsed it over to the company.
Claimant in this case received one check from the insurer for the days he was off from work in June. He endorsed it over to the company in July, because he had already received the company's check for the days off and had returned to work on the same job where he was injured, though still receiving treatment from the chiropractor.
In November of 1975 his back again became painful, as before. He complained again to his superior and also told him he had pain from an old knee injury not job related. His employer made an appointment for him to be seen by an orthopedist at company expense. On December 3, 1975, a letter was sent by the company to the agent of the insurer referring to the back injury of June 5 reminding the agent of a telephone conversation with him concerning claimant on the same day of the letter. The letter stated that claimant was still having trouble with the back injury and that an appointment had been made with the orthopedic surgeon, Dr. Sudduth, to examine his back as well as his knee. Insurer was informed that the doctors and hospital had been notified to send all charges for treatment of the back injury to the insurer. The letter stated that claimant returned to work the date of the letter, December 3, 1975, after being continuously absent since November 7, 1975. The orthopedist stated the back pain occurring in November came from the condition which became symptomatic through lifting on June 5.
The orthopedist thereafter referred claimant to a surgeon in Birmingham, who subsequently performed a fusion of vertebrae. The insured received the medical reports from the orthopedist and paid them. Claimant received checks from defendant during the time he was off from work.
*635 It would hold that the employer is estopped from claiming benefit of the statute of limitation because of its acts and representation to claimant from June 5, 1975 through its letter of December 3, 1975.
We have previously shown that defendant had established a policy and assumed responsibility of filing notice of claim for compensation with the insurer on behalf of its employees. It did so in this instance. The evidence clearly shows that as of the letter of December 3, 1975, defendant knew of the continuing difficulty from the injury on June 5, 1975. This was not a new injury. It is certainly not unusual for effects of an accident to ease after initial treatment and get worse again after a period of work. This does not require a second "accident" as argued by defendant to the court below.
The defendant continued its assumed responsibility of notification to the insurer of the onset of new pain from the old injury. It provided continued medical treatment for that injury, sending claimant to a specialist for examination for treatment. There was no notice to claimant other than that his injury was continuing to be recognized as compensable for medical treatment. The defendant paid him a company check in the same or greater amount than that provided by the Workmen's Compensation Act. Defendant stated that neither it nor the employee knew whether compensation was to be paid until the insurer's check was received. There was never any notice to claimant that his injury was not compensable-all appearances were to the contrary, even to the employer, at least through December 3, 1975.
I submit by its acts and assumed duties, relied upon by claimant, defendant is estopped as a matter of law from claiming benefit of the statute of limitation in this case.