834 F.2d 903
 Marion F. MIDDLETON, Plaintiff-Appellee,
v.
DAN RIVER, INC., Defendant-Appellant.
Donald R. McCOY as personal representative for deceased
party Eunice McCoy, Plaintiff-Appellee,
v.
DAN RIVER, INC., Defendant-Appellant.
Clifton SMITH, Plaintiff-Appellee,
v.
DAN RIVER, INC., Defendant-Appellant.
Ruby C. HILLIARD as personal representative for deceased
party Lonnie Hilliard, Plaintiff-Appellee,
v.
DAN RIVER, INC., Defendant-Appellant.
Zack SCHOFIELD, Plaintiff-Appellee,
v.
DAN RIVER, INC., Defendant-Appellant.
 Nos. 85-7592, 85-7655.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 21, 1987.
 
 Warren B. Lightfoot, Bradley, Arant, Rose & White, Scott M. Phelps, Birmingham, Ala., for Dan River, Inc.
 Rick Harris, Moore, Kendrick, Glassroth, Harris, Bush & White, Stephen R. Glassroth, Montgomery, Ala., for Middleton, McCoy, Smith, Hilliard and Schofield.
 Appeals from the United States District Court for the Middle District of Alabama.
 Before RONEY, Chief Judge, CLARK, Circuit Judge, and DOYLE*, Senior District Judge.
 PER CURIAM:
 
 
 1
 These consolidated diversity cases involve claims for workmen's compensation benefits for occupational pneumoconiosis under Alabama law. The district court awarded benefits to all five plaintiffs. Middleton v. Dan River, Inc., 617 F.Supp. 1206 (M.D.Ala.1985). Defendant appeals, asserting error in finding that (1) the statute of limitations did not bar three of the claims, (2) the disabilities were compensable under the Alabama Workmen's Compensation Law, (3) res judicata did not bar one claim, and (4) a judgment nunc pro tunc was appropriate for a plaintiff who died while the action was pending. We affirm, except as to Eunice McCoy, whose claim should have been barred by the statute of limitations.
 
 
 2
 Dan River, Inc. purchased a textile mill in Greenville, Alabama, from Alabama Mills in 1956. From 1956 until October 26, 1981, Dan River operated the mill to produce corduroy fabric for clothing. In the summer of 1983, after Dan River closed the mill, the Brown Lung Association sent representatives to the Greenville area, as a result of which the plaintiffs brought these lawsuits pursuant to Ala.Code Sec. 25-5-1 through Sec. 25-5-231 (1975).
 
 
 3
 All plaintiffs are former employees of Dan River, who had worked in the Greenville mill for periods ranging from 15 to 51 years. Clifton Smith and Marion F. Middleton worked for Dan River until the closing of the Greenville mill. Lonnie Hilliard retired on March 22, 1980, Zack Schofield quit on September 12, 1980, and Eunice McCoy's last day of work was June 24, 1982.
 
 
 4
 Each plaintiff worked primarily in one phase of the manufacturing process throughout his or her tenure at the mill. Middleton and Schofield worked in the weaving room, Hilliard and McCoy worked in the spinning room, and Smith worked in the card room. Each plaintiff has a significant smoking history. Each plaintiff claims to have contracted a chronic disabling lung disease as a result of employment at Dan River's Greenville mill.
 
 
 5
 Whether or not plaintiffs' various lung diseases resulted from their work at Dan River was hotly disputed, primarily because plaintiffs' experts and defendant's experts disagreed over the type of disease exposure to cotton dust may cause. The doctor to whom Dan River referred three of the plaintiffs, Dr. Dick Briggs, expressed his belief that cotton dust exposure can give rise to an "acute" form of byssinosis, which is characterized almost exclusively by a phenomenon known as "Monday morning syndrome." A cotton mill worker suffering the Monday morning syndrome experiences chest tightness, difficulty inhaling, coughing, and wheezing most dramatically after he or she has returned to the mill after being away for a few days. During the first day back, the tightness and shortness of breath get progressively worse until they peak at the end of the day.
 
 
 6
 The plaintiffs' experts did not disagree with Dr. Briggs that this acute form of byssinosis exists; indeed, one of the plaintiffs' experts was the doctor who discovered the acute form of the disease. They simply maintained that there is also a "chronic" form of byssinosis which may follow a period of acute byssinosis or may arise independently of any "Monday morning" attacks. According to Drs. Richard Schilling and Neil Schachter, a worker suffering from this chronic form will experience shortness of breath on exertion, an inability to keep up with people his or her own age, and decreases in both total lung capacity and the speed with which air can be exhaled. Dr. Briggs, however, was at best skeptical that a chronic form of byssinosis exists, and in any event, he did not believe that such a chronic form would be disabling.
 
 
 7
 This same controversy was raging in the 1970s when the National Institute of Occupational Safety and Health (NIOSH) adopted regulations requiring that cotton mill workers be given periodic pulmonary function tests and be referred to independent physicians if their performance on the tests indicated respiratory impairment. See 29 C.F.R. Sec. 1910.1043(h)(3)(iii). In response to these regulations, Dan River instituted a "medical surveillance" program in 1979. All of the plaintiffs participated in this program, and because of the results of their pulmonary function tests, plaintiffs Middleton, Hilliard and Schofield were referred to Dr. Briggs. They went to see the doctor on December 5, 21, and 19, 1979, respectively. McCoy and Smith were not referred to Dr. Briggs.
 
 
 8
 After questioning Middleton, Hilliard and Schofield and administering both pulmonary function and exercise tests, Dr. Briggs concluded that each of the three suffered from "chronic airway obstruction, secondary to chronic bronchitis." He indicated in each of his reports to Dan River that the three plaintiffs' respiratory problems resulted primarily from their cigarette smoking, but that he could not state whether there were other contributing factors such as exposure to cotton dust. The reports also stated that each plaintiff did not have byssinosis.
 
 
 9
 According to Dr. Briggs, he sat down with each of the three men and explained the results of the tests and his recommendations. The plaintiffs disputed this at trial. In any event, it was undisputed that Dan River sent Dr. Briggs' reports to Hilliard and Schofield's personal physician, Dr. Vernon Stabler. The form transmittal letters of February 4, 1980, indicated that the patients had a "complete pulmonary work up" but did not go into further detail.
 
 
 10
 The plaintiffs' expert, Dr. Neil Schachter, disagreed with Dr. Briggs' conclusions with respect to Middleton, Hilliard, and Schofield and what were in effect Dan River's conclusions with respect to plaintiffs McCoy and Smith. After examining all five of the plaintiffs prior to trial, Dr. Schachter concluded that Middleton, Hilliard, and Schofield suffered from grade three byssinosis and were totally disabled. McCoy and Smith, Dr. Schachter testified, also suffered from byssinosis but were only partially disabled. According to Dr. Schachter, the respiratory impairment of all five plaintiffs resulted from their exposure to cotton dust on the job.
 
 
 11
 After a five-day bench trial, the district court entered judgment in favor of all plaintiffs.
 
 I. Statute of Limitations
 
 12
 Dan River argues that the claims of McCoy, Hilliard, and Schofield are barred by Alabama's one-year statute of limitations. This is perhaps the most difficult issue raised by Dan River. In case of contraction of the disease of occupational pneumoconiosis, the Alabama Workmen's Compensation Act, Ala.Code Sec. 25-5-147 (1975), bars actions not brought within one year of the date of injury, which is the date of last exposure to the hazards of the disease in the employment of the employer. McCoy's last date of exposure, within the meaning of the statute, was June 24, 1982, while Hilliard was last exposed on March 22, 1980, and Schofield's last exposure was September 12, 1980. Their complaints were filed in the district court on October 21, 1983, December 2, 1983, and January 4, 1984, respectively. All three plaintiffs conceded that their claims were not filed within the statutory period, arguing instead that the statutory period should be equitably tolled.
 
 
 13
 Alabama law provides that the running of the statute of limitations is tolled when the employer or its agent innocently or fraudulently misleads the claimant in the postponing of the filing of his claim. Ex parte Youngblood, 413 So.2d 1146, 1149 (Ala.1981). It is immaterial whether the employee relies upon actual fraud or mere estoppel. Dorsey v. U.S. Pipe & Foundry Co., 353 So.2d 800, 803 (Ala.1977). To establish a claim of fraudulent concealment, a plaintiff must prove:
 
 
 14
 ... (1) that the employer knew, or should have known, through its medical examination staff that the employee was suffering from a disease or infirm condition ...; (2) that the employer knew, or should have known, that the employee did not know of his disease or condition ...; (3) that the employee did not have reason to understand its relation to his employment ...; and (4) that the employer (or the medical staff provided by the employer) did in fact fail to disclose to the employee that which it had an obligation to disclose, i.e., the nature and extent of the employee's disease or condition.
 
 
 15
 Belser v. American Cast Iron Pipe Co., Inc., 356 So.2d 659, 663 (Ala.Civ.App.1978) (citations and footnote omitted).
 
 
 16
 False representation, even if innocent, raises the issue of whether the employer or its representative is "primarily responsible" for the employee's delay in filing his claim. That issue presents a question for the factfinder. Whether a person is a representative of the employee is also essentially one of fact. Ex parte Youngblood, 413 So.2d at 1149.
 
 
 17
 The district court, based on its findings of fact, held that the plaintiffs had satisfied their burden of establishing both fraudulent concealment and misrepresentation. Because the district court's findings of fact and conclusions of law with respect to the fraudulent concealment of Hilliard's and Schofield's condition were not clearly erroneous, the question of whether Dan River affirmatively misrepresented those plaintiffs' condition need not be reached. Plaintiff McCoy did not prove a case of fraudulent concealment or misrepresentation, however, and thus her claim was barred by the statute of limitations.
 
 
 18
 Dan River's first contention with respect to the fraudulent concealment issue is that Hilliard and Schofield failed to prove the first element of the Belser test: that the company knew or should have known of the plaintiffs' condition. The problem with this position is that it depends upon the acceptance of assertions made by Dr. Briggs and defendant's other experts that there simply is not a chronic disabling form of byssinosis. Had the district court accepted this proposition, there might well have been a failure of proof, for there was no evidence that all of the plaintiffs suffered from Monday morning syndrome, the sine qua non of the acute form. The district court apparently found, however, that (1) there is a chronic form of byssinosis and (2) Dan River had sufficient indicators that the plaintiffs were suffering from such a disease. We hold that there was sufficient consistent evidence to support such a finding.
 
 
 19
 The plaintiffs' expert, Dr. Schilling, testified with regard to several studies, some of which he had conducted, that concluded that exposure to cotton dust could give rise to a chronic and irreversible lung disease and this disease might not be manifested by Monday morning syndrome. The National Research Council, while not necessarily agreeing with these studies, has acknowledged their existence:
 
 
 20
 A portion of a cotton-worker population develops irreversible respiratory impairment, usually after many years of exposure. It has not been clearly and unequivocally established that this phenomenon results from occupational cotton exposures; many observers believe that it does. A deficiency in the existing evidence regarding byssinosis is the lack of demonstrated progression from the acute stage to a chronic stage. It has been stated that some workers who manifest acute responses never appear to develop irreversible impairment. Conversely, some workers develop chronic pulmonary impairment in an insidious fashion with no documented history of acute symptoms.
 
 
 21
 Committee on Byssinosis, Division of Medical Sciences, Assembly of Life Sciences, National Research Council, Byssinosis: Clinic and Research Issues (1982). We cannot find that the district court clearly erred simply because it chose to believe plaintiffs' studies rather than defendant's.
 
 
 22
 There was also sufficient evidence for the district court to conclude that Hilliard and Schofield were in fact suffering from chronic byssinosis. Dr. Schilling, whose opinion the district court was free to give great weight, testified that the symptoms of chronic byssinosis are shortness of breath on exertion, an inability to keep up with people one's own age, and decreases in total lung capacity and the speed with which air can be exhaled. In the exhibit containing Hilliard's company medical records, there are numerous references to these symptoms. For example, in Hilliard's answer to a questionnaire, he indicated that he became short of breath when washing or dressing, and Dr. Briggs' report noted that "[t]he exercise test was stopped because of breathlessness." The same is true of Schofield's company records. Indeed, there is some indication that Schofield was suffering from the acute form of byssinosis, such as Schofield's answer to a questionnaire in which he stated that he does experience chest tightness apart from colds and Dr. Briggs' note that Schofield had experienced breathlessness for the last four or five years. Finally, the very reason Dan River sent Hilliard and Schofield to Dr. Briggs was that both had scored markedly below average on pulmonary function tests measuring lung capacity and the ability to exhale.
 
 
 23
 In short, while Dan River may remain unconvinced that cotton dust exposure gives rise to a chronic disabling disease, at the time it was examining its employees and referring them to Dr. Briggs, it was well aware that a good portion of the medical community disagreed. The company had already lost a lawsuit in which the plaintiff's acute condition had been hotly contested, and it can be assumed that at least by that time Dan River had fully researched the byssinosis issue. Indeed, although his testimony indicated considerable doubt as to the existence of a chronic disabling byssinosis, Dr. Briggs ultimately acknowledged that the issue was an open question. Insofar as the district court determined that the plaintiffs' evidence, most of which was available and probably known to Dan River at the time it examined plaintiffs, was a sufficient basis on which to conclude that a chronic form of byssinosis existed, it was also reasonable for the court to conclude that Dan River knew or should have known that Hilliard and Schofield suffered from such a disease.
 
 
 24
 Dan River also argues that Hilliard and Schofield failed to prove the fourth element of the Belser test: that the company failed to disclose to them the nature and extent of their condition. The company argues that it disclosed the information in two ways: (1) directly, when Dr. Briggs explained his reports to Hilliard and Schofield; and (2) indirectly, when Dr. Briggs' reports were sent to their personal physician. The first of these contentions is purely a fact question, and it was clearly within the district court's province to choose between conflicting testimony. Dr. Briggs testified that he told Hilliard he needed to "avoid exposure to noxious inhalants," and told Schofield that cotton dust exposure could not be ruled out as contributing to his problem. Yet Hilliard and Schofield both testified that Dr. Briggs did not explain anything about the tests. Given the district court's opportunity to observe the witnesses' demeanor, and, the fact that both Hilliard and Schofield are functionally illiterate, we cannot find clear error in the court's holding that there was no disclosure directly to Hilliard and Schofield.
 
 
 25
 Whether sending Dr. Briggs' reports to Dr. Stabler was adequate disclosure is a more difficult question. The reports did contain, as we concluded earlier, information sufficient for Dr. Briggs and Dan River to conclude that Hilliard and Schofield had chronic byssinosis. Moreover, the reports included passing remarks that exposure to cotton dust could not be ruled out as a factor contributing to the patients' problems. On the other hand, both reports contained the conclusion that the patients did not have byssinosis, with no indication whether this meant acute byssinosis or chronic byssinosis. Thus, whatever else was disclosed to Dr. Stabler, who was apparently a local general practitioner, he was expressly told that Hilliard and Schofield did not have the one disease that could be attributed to cotton dust exposure. We note further that there was nothing whatsoever in Dan River's transmittal letters to alert Dr. Stabler that he even needed to read the reports, much less challenge their ultimate conclusions. Finally, even assuming that the reports themselves were disclosures of Hilliard's and Schofield's conditions, the district court had sufficient reason to find that Dr. Stabler was not acting as the men's representative for the purpose of disclosure.
 
 
 26
 For the reasons stated above, we find that plaintiffs Hilliard and Schofield did prove their case that Dan River's fraudulent concealment prevented them from filing their claims within the statute of limitations. As noted earlier, however, we reach a different conclusion with respect to plaintiff McCoy. McCoy testified that she answered Dan River's questionnaire falsely because she feared the company would fire her if it appeared she had byssinosis. Additionally, her pulmonary function test scores were normal enough that she was not referred to Dr. Briggs. Under these circumstances, it cannot be said that Dan River knew or should have known that she had byssinosis, and her claim that the statute of limitations should be equitably tolled based on fraudulent concealment must fail.
 
 II. Sufficiency of the Evidence
 
 27
 Dan River argues that all plaintiffs failed to prove that they were exposed to any agent causing byssinosis. Plaintiffs claimed to be suffering from an occupational pneumoconiosis as described in Article Five of Alabama's Workmen's Compensation Act. An occupational pneumoconiosis is defined as:
 
 
 28
 ... [a] disease of the lungs caused by inhalation of minute particles of dust over a period of time, which dust is due to causes and conditions arising out of and in the course of the employment, without regard to whether or not said causes or conditions are inherent in the employment or can be eliminated or reduced by due care on the part of the employer.
 
 
 29
 Ala.Code Sec. 25-5-140(1) (1975). In order for an employee to recover for an occupational pneumoconiosis, the disease must:
 
 
 30
 ... [arise] out of and in the course of the employment and [result] from the nature of the employment in which the employee was engaged under such employment. By "nature of employment" it is meant that as to the industry in which the employee was so engaged there is attached a particular hazard of such disease that distinguishes it from the usual run of occupations and is in excess of the hazards of such disease attending employment in general.
 
 
 31
 Ala.Code Sec. 25-5-141 (1975).
 
 
 32
 Alabama courts have interpreted the provisions regarding occupational pneumoconiosis to require both legal causation, proof "that in the performance of her duties [the employee] was exposed to a danger or risk materially in excess of that to which people not so employed are exposed," and medical causation, proof that "the exposure to conditions was, in fact, a contributing cause of her injury." Fordham v. Southern Phenix Textiles, Inc., 387 So.2d 204, 205 (Ala.Civ.App.), cert. denied, 387 So.2d 206 (Ala.1980).
 
 
 33
 Dan River does not challenge the legal standards applied by the district court, but argues that the district court's factual findings were "clearly erroneous." As explained by the United States Supreme Court:
 
 
 34
 ... If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.
 
 
 35
 Anderson v. City of Bessemer City, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518 (1985). See also United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). A review of the record reveals ample evidence upon which the district court could base its findings.
 
 
 36
 Dan River claims that the plaintiffs failed to prove legal causation because they failed to introduce any evidence of exposure to "cotton trash dust" which was stipulated as necessary to the development of byssinosis by several of the experts in this case. Dan River presented expert testimony that the levels of cotton trash dust at the Greenville mill were within safe levels. Dan River's argument is that each plaintiff had to prove particularized exposure to harmful levels of cotton trash dust to satisfy the burden of proof. Dan River cites no Alabama law to support this proposition.
 
 
 37
 A similar argument was raised by Dan River before the Alabama Court of Civil Appeals. Dan River Mills, Inc. v. Foshee, 365 So.2d 1232 (Ala.Civ.App.1979). On similar facts, Dan River argued that the plaintiff had failed to prove exposure to cotton trash dust. The Alabama court found that there was conflicting evidence of whether cotton trash dust was the sole substance in cotton dust that causes byssinosis. The court noted that the plaintiff had worked in the weaving room for 38 years, was exposed to cotton dust throughout that period, and part of the dust was respirable. The court went on to say:
 
 
 38
 Where, as here, the trial court is reasonably satisfied from the evidence that the employee was exposed to a hazard peculiar to the industry, and that his disease resulted from that exposure ... it is not appropriate for this court to substitute its judgment for that of the trier of fact.
 
 
 39
 To further substantiate what we have said, we note that cases of this nature must be interpreted in light of the fundamental beneficient policy of the Workmen's Compensation Act. Because of the act's remedial purposes, it should be liberally construed and all reasonable doubts resolved in favor of the employee.
 
 
 40
 Id. at 1237 (citations omitted).
 
 
 41
 In the instant case, the district court found that the textile industry presents a hazard peculiar to the industry and that the plaintiffs had contracted a disabling form of byssinosis. Both of these findings are supported by substantial record evidence. The district court also found that controversy exists regarding the exact part of cotton dust which causes byssinosis and therefore adopted a broader definition, a finding that is also supported by substantial record evidence. A review of the record reveals ample support for the district court's finding of legal causation, and the district court's determination will not be disturbed.
 
 
 42
 Dan River also challenges the plaintiff's proof of medical causation, essentially claiming that Dr. Schachter's diagnoses were unreliable and that the plaintiffs had to prove they suffered an acute byssinostic response. Credibility choices and the resolution of conflicting testimony are for the trial court, if not clearly erroneous. United States v. Reddoch, 467 F.2d 897, 898 (5th Cir.1972). As discussed earlier, the district court's decision to rely on the testimony of Drs. Schilling and Schachter that there exists a chronic byssinosis cannot be disturbed as clearly erroneous just because Dan River presented contrary evidence.
 
 III. Schofield Wavier
 
 43
 Dan River argues that Schofield's claim is barred by a release given to Dan River in a prior state court proceeding and that the district court erred in refusing to give the release full force and effect.
 
 
 44
 In November 1979, Schofield injured his knee, while working at the Greenville mill. During discussions with his attorney, Schofield inquired whether the workmen's compensation action could be expanded to include his lung problems. That claim, however, was not added to the lawsuit. In settlement for $4,500, Schofield executed a release which was approved by the Alabama trial court. Dan River claims that Schofield released it from any and all claims he had or may have in the future under Alabama Workmen's Compensation Act and acknowledged and assumed all risks, chance, or hazard that any injury may be or may become permanent, progressive, greater, or more extensive than was then known or expected.
 
 
 45
 The Alabama law regarding releases in workmen's compensation claims provides that, unless ambiguous, a release "will be given effect according to the intention of the parties to be judged by the court from what appears within the four corners of the instrument itself, and parol evidence is not admissible to impeach it or vary its terms." Finley v. Liberty Mutual Insurance Co., 456 So.2d 1065, 1067 (Ala.1984) (quoting Miles v. Barrett, 223 Ala. 293, 134 So. 661 (1931)).
 
 
 46
 The district court determined that an ambiguity existed in that the release referred generally to the petition filed by the parties. It therefore looked to the surrounding circumstances to determine the intention of the parties. The court concluded that the intention of the parties was that the release relate to injuries incident to the knee injury and that no intention was expressed that it relate to an unrelated lung disease. The court found that to use this release to bar Schofield's claim for lung disease would violate reason and fairness. Whether a written contract is ambiguous is a question of law. Holt v. Davidson, 388 So.2d 548, 549 (Ala.1980).
 
 
 47
 Should the trial court determine a contract to be ambiguous ... the question of the true meaning of the contract becomes an issue for the [trier of fact] to decide.... [E]vidence of facts and circumstances aliunde (from another source) or in pais (outside the record of the contract) may be introduced to aid the [trier of fact] in its clarification of the terms of the contract; it then becomes the province of the [trier of fact] to draw inferences and ascertain those facts from which the true meaning of the contract's terms can be determined.
 
 
 48
 Miles College, Inc. v. Oliver, 382 So.2d 510, 511 (Ala.1980). The district court did not err in finding the Schofield release to be ambiguous, nor did it err in the construction given the terms of the release.
 
 IV. Hilliard Judgment Nunc Pro Tunc
 
 49
 Dan River argues that the district court erred in entering judgment for Hilliard nunc pro tunc to the date on which the case was submitted to the court for decision. The district court took these consolidated cases under submission on November 16, 1984. On April 6, 1985, before the court rendered final judgment, Hilliard died. Dan River alleges that the district court committed plain error when it entered judgment for Hilliard nunc pro tunc to the date the case was submitted to the court for decision. Dan River argues that since the workmen's compensation statutes were designed as a substitution for common law rights and remedies, use of the common law remedy of judgment nunc pro tunc clearly violated dispositive and clear Alabama law that a party's right to workmen's compensation benefits ends with his death.
 
 
 50
 Dan River cites several Alabama cases to support its contention, but none of these cases are factually similar to the instant case. In Ex parte Woodward Iron Co., 277 Ala. 133, 167 So.2d 702 (1964), the employee filed an action in August 1961. The employer filed a demurrer, but the employee died before any action was taken by the court. In Cox v. Republic Steel Corp., 459 So.2d 886 (Ala.Civ.App.1984), suit was filed after the employee's death from nonrelated causes. In Smith v. West Point-Pepperell, Inc., 431 So.2d 1268 (Ala.Civ.App.1983), the employee died during discovery proceedings. In Owens v. Ward, 49 Ala.App. 293, 271 So.2d 251 (1972), the employee died from unrelated causes prior to the initiation of the lawsuit. For the reasons expressed in the district court's opinion, see Middleton v. Dan River, 617 F.Supp. at 1221-25, the award of judgment nunc pro tunc to Hilliard is affirmed.
 
 
 51
 For the foregoing reasons the district court's judgments in these consolidated cases are due to be
 
 
 52
 AFFIRMED in part, REVERSED in part.
 
 
 
 *
 The Honorable James E. Doyle, Senior U.S. District Judge for the Western District of Wisconsin, sitting by designation, did substantial work on this opinion prior to his death. This decision and opinion is rendered by a quorum pursuant to 28 U.S.C.A. Sec. 46(c) and (d)